UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AHSINET BROWN, ASHLEY THOMPSON, PRECIOUS JACKSON, TYNISE WATSON, and SANDRA ADARQUAH, Individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>-against-<br><br><br>WILD BLUE ORCHID, INC. (d/b/a CHOCOLAT), MOCA BAR AND GRILL, INC., and LEON ELLIS, Individually and his Official Capacity,<br><br>Defendants. | **COMPLAINT**<br><br><br><br>**FLSA COLLECTIVE ACTION AND RULE 23 CLASS ACTION COMPLAINT** |

Plaintiffs AHSINET BROWN ("Brown"), ASHLEY THOMPSON ("Thompson"), PRECIOUS JACKSON ("Jackson"), TYNISE WATSON ("Watson"), and SANDRA ADARQUAH ("Adarquah") (collectively, the "Plaintiffs") individually and on behalf of others similarly situated by and through their attorneys, COHEN & FITCH LLP, allege against Defendants WILD BLUE ORCHID, INC. (d/b/a CHOCOLAT) ("Chocolat"), MOCA BAR AND GRILL, INC. ("Moca"), and LEON ELLIS ("Elllis"), Individually and in his Official Capacity, (Chocolat, Moca, and Ellis are collectively "Defendants") as follows:

**JURISDICTION AND VENUE**

1.      This Court has subject matter jurisdiction pursuant to 29 U.S.C. § 201 *et seq.* (Fair Labor Standards Act), 28 U.S.C. § 1337 (interstate commerce), and 28 U.S.C. § 1331 (original federal question jurisdiction). Supplemental jurisdiction over the New York State law claims is conferred by 28 U.S.C. § 1367(a), as such claims are so related in this action within

such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

2.      Venue is proper in this District because Defendants conduct business in this district, and the acts and/or omissions giving rise to the claims alleged herein took place in this District.

## JURY DEMAND

3.       Plaintiffs respectfully demand a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## THE PARTIES

4.      Upon information and belief, Defendant Chocolat is a domestic business corporation previously organized and existing under the laws of the State of New York and maintains its principal place of business at 2223 Frederick Douglass Blvd, New York, NY 10026.

5.      Upon information and belief, Defendant Moca is a domestic business corporation previously organized and existing under the laws of the State of New York and maintains its principal place of business at 2210 Frederick Douglass Blvd, New York, NY 10026.

6.      Upon information and belief, Defendant Ellis resides in the State of New York and is an owner, manager and/or employee of both Chocolat and Moca.

7.      Upon information and belief, at all times relevant hereto, Defendants have been a business or enterprise engaged in interstate commerce employing more than two (2) employees and earning gross annual sales over $500,000.

8. Upon information and belief, at all relevant times hereto, Defendants have been and continue to be "employers" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of the FLSA, 29 U.S.C. § 203.

9. Defendants constitute an enterprise within the meaning of the FLSA, 29 U.S.C. § 203(r).

10. Upon information and belief, Chocolat is a restaurant and bar/lounge which is engaged in the business of serving food and drink to customers and is located at 2223 Frederick Douglass Blvd, New York, NY 10026.

11. Upon information and belief, Moca is a restaurant and bar/lounge which is engaged in the business of serving food and drink to customers and is located at 2210 Frederick Douglass Blvd, New York, NY 10026.

12. Upon information and belief, Defendant Ellis owns and operates both Chocolat and Moca, which are in close proximity to each other.

13. Defendants employ servers, bartenders, food runners, hosts, all of whom, upon information and belief, are paid less than required under federal and New York State law for their work each day.

14. Defendant Ellis is the principal and, upon information and belief, an officer of Chocolat.

15. Upon information and belief, defendant Chocolat functions for Defendant Ellis' profit and upon information and belief, Defendant Ellis personally profits from his role as the principal and/or officer of Chocolat.

16. Defendant Ellis is the principal and, upon information and belief, an officer of Moca.

17.     Upon information and belief, Defendant Moca functions for Defendant Ellis' profit and upon information and belief, Defendant Ellis personally profits from his role as the principal and/or officer of Moca.

18.     Defendant Ellis possesses the authority to hire and fire employees, supervise their work schedules, set and control their rates of pay, maintain payroll records, and to the extent employment records are kept for employees, Defendant Ellis is involved in maintaining those records for both Defendant Chocolat and Defendant Moca.

19.     Defendant Ellis approved the payroll practices for Chocolat and Moca employees, including Plaintiffs.

20.     Defendant Ellis possesses operational control over Chocolat and Moca through his financial control over both of those entities.

21.     Upon information and belief, Defendant Ellis has authority over Chocolat's and Moca's bank accounts and credit cards, signed the leases on behalf of their principal places of business, and obtained insurance policies on behalf of each entity.

22.     Upon information and belief, Defendant Ellis also paid Chocolat's and Moca's bills.

23.     Plaintiffs are women who were hired to work at Chocolat as servers, bartenders, and/or hostesses within the last three (3) years.

24.     Defendant Ellis is engaged in business in the City of New York, County of New York who is sued individually in his capacity as owner, officer, employee, and/or agent of the Corporate Defendants.

25. Defendant Ellis exercises sufficient operational control over the Corporate Defendants operations to be considered Plaintiffs' employer under the Fair Labor Standards Act ("FLSA") and New York State Labor Law ("NYLL").

26. At all relevant times, Defendants have been Plaintiffs' employers within the meaning of the NYLL §§ 2 and 651.

## NATURE OF THE ACTION

27. Plaintiffs bring this action on behalf of (a) themselves and other similarly situated employees who have worked for Defendants on or after the date that is three (3) years before the filing of the instant Complaint pursuant to the FLSA and the regulations thereto; and (b) themselves and other similarly situated employees who have worked for the Defendants on or after the date that is six (6) years before the filing of the instant Complaint pursuant to the NYLL (§ 650 *et seq.*) and the New York Commissioner of Labor's Wage Order (the "Wage Orders,") codified at 12 N.Y.C.R.R. 141 *et seq.*, based upon the following acts and/or omissions which Defendants committed:

   i. Defendants' failure to compensate Plaintiffs for all hours worked as required by federal and state law and regulations;

   ii. Defendants' failure to compensate Plaintiffs for all hours worked at the statutory minimum wage as required by federal and state law and regulations;

   iii. Defendants' failure to timely pay Plaintiffs their earned wages pursuant to FLSA and NYLL § 191.

iv. Defendants' failure to pay overtime compensation required by federal and state law and regulations to Plaintiffs who worked in excess of forty (40) hours per week;

v. Defendants' failure to provide Plaintiffs' Brown and Jackson with spread-of-hours payments under 12 NYCRR 146-1.6 and 137-1.7;

vi. Defendants' failure to provide Plaintiffs with a wage notice as required by NYLL § 195;

vii. Defendants' failure to provide Plaintiffs with accurate paystubs as required by NYLL § 195;

viii. Defendants' policy to unlawfully deduct portions of Plaintiffs' wages in contravention of NYLL § 193;

ix. Defendants' failure to provide Plaintiffs with several weeks of their pay, including their last week of work in contravention of NYLL § 191.

28. At all relevant times hereto, Plaintiffs were engaged in interstate "commerce" within the meaning of the FLSA.

29. Defendants have knowingly and willfully engaged in a policy, pattern or practice of violating the FLSA and NYLL, as detailed in this Complaint.

## FACT ALLEGATIONS

### Defendants' Wage and Hour Violations

30. At all times relevant hereto, Defendants have committed the following acts and/or omissions intentionally and willfully, with knowledge that they have been violating federal and state laws and that Plaintiffs have been and continue to be economically injured.

31.     Defendants have maintained a policy and practice to routinely not pay their employees in timely manner in accordance with federal and New York State law. Specifically, Defendants maintain a workforce of servers, bartenders, hosts, and other similar manual labor positions, all of whom are not always paid within seven (7) calendar days after the end of the week in which the wages are earned.

32.     Defendants have maintained a policy and practice of failing to compensate Plaintiffs and other similarly situated employees for every hour they have worked.

33.      Defendants have maintained a policy and practice of failing to compensate Plaintiffs and other similarly situated employees for every hour they have worked at the statutory minimum wage.

34.     Defendants have maintained a policy and practice of failing to pay overtime compensation required by federal and New York State law and regulations to Plaintiffs and other similarly situated employees who worked in excess of forty (40) hours per week.

35.     Defendants have maintained a policy and practice of deducting from Plaintiffs and other similarly situated employees' wages for unlawful reasons. Specifically, Defendants have maintained a policy and practice of unlawfully deducting maximum allowable for meals for each employee and for each shift that they work. This deduction is made even if the employee does not eat or want the meal. Further, these meals do not include the required foods that would entitle Defendants to deduct for such meals under New York State and Federal laws.

36.     Defendants have maintained a policy and practice of failing to provide Plaintiffs and other similarly situated employees with proper wage notices

37.      Defendants have maintained a policy and practice of failing to provide Plaintiffs and other similarly situated employees with proper and accurate paystubs.

38.     Defendants have maintained a policy and practice of failing to pay Plaintiffs and other similarly situated employees an extra hour of pay when they worked a span of hours that exceeded ten (10) hours in a single day.

**Specific Allegations of Ahsinet Brown**

39.     Plaintiff Ahsinett Brown's consent to sue form is attached hereto as Exhibit A.

40.     Plaintiff Brown was hired and worked for Defendant Chocolat as a hostess from on or about March 2016 until on or about November 2016.

41.     At the time Brown was hired, Defendants did not give her written notice of her pay rate, the overtime rate, how she would be paid, or any other information Defendants were obligated to provide pursuant to New York State and federal law, nor did Defendants ever provide this written notice at any time during her employment.

42.     Plaintiff Brown was hourly employee.

43.     During her tenure at Chocolat, plaintiff Brown would occasionally work in excess of 40 hours per week.

44.     However, Defendants never paid her time and a half on the weeks she worked more than 40 hours.

45.     During her employment with Chocolat, plaintiff Brown would occasionally work in excess of ten (10) hours in one day, but Defendants would not pay her for an additional hour of work as is required by New York State and federal law.

46.     Further, every one of plaintiff Browns' paychecks from Defendants included a food deduction for each day she worked, regardless if she wanted or consumed the

food provided by Defendants. Moreover the meals provided by Defendants did not comport with New York State Law to qualify for a deduction on plaintiff Brown's paychecks.

47.     In addition, Defendants would routinely fail to pay plaintiff Brown her paycheck on the regular pay date, and almost always paid her more than seven (7) calendar days after the end of the week in which her wages were earned.

48.     On some occasions, plaintiff Brown was not paid at all for wages she had earned.

49.     When plaintiff Brown complained to Defendants about these unlawful pay practices, Defendants retaliated by scheduling her for less shifts and wrote her up for complaining.

50.     Upon information and belief, Defendants would retaliate against all of their employees by scheduling them for less shifts or terminating them when they complained about the unlawful pay practices.

51.     At some point in November of 2016 Defendants stopped paying plaintiff Brown altogether, falling behind approximately two pay checks.

52.     Plaintiff Brown complained to managers that worked for Defendants, who kept making excuses as to why Defendants were not paying her.

53.     As a result, Plaintiff Brown stopped working for Defendants, but continued to demand she get paid for the wages she had already earned.

54.     On or about November 18, 2016 Defendants provided Plaintiff Brown two checks that bounced.

55.     Thereafter, after Plaintiff called to complain, on or about November 19, 2016 Defendants paid plaintiff Brown with checks from an account which appeared to be owned by defendant Moca.

56.     This payment was for work she done more than a month after she had earned these wages.

57.     At no time during her association with Defendants was plaintiff Brown ever employed by Defendant Moca, nor had she ever worked at the physical location where Moca is located.

58.     Further said pay checks from Defendant Moca included paystubs that reflected several inaccuracies, such as, the amount of taxes withheld for the year and the year to date earnings for plaintiff Brown.

59.     Upon information and belief, Defendants were routinely paying Chocolat employees with Moca accounts and vice versa.

**Specific Allegations of Precious Jackson**

60.     Plaintiff Precious Jackson's consent to sue form is attached hereto as Exhibit A.

61.     Plaintiff Jackson was hired and worked for Defendant Chocolat as a hostess from on or about December 2015 until on or about October 2016.

62.     At the time Jackson was hired, Defendants did not give her written notice of her pay rate, the overtime rate, how she would be paid, or any other information Defendants were obligated to provide pursuant to New York State and federal law, nor did Defendants ever provide this written notice at any time during her employment.

63.     Plaintiff Jackson was hourly employee.

64. During her tenure at Chocolat, plaintiff Jackson would occasionally work in excess of 40 hours per week.

65. However, Defendants never paid her time and a half on the weeks she worked more than 40 hours.

66. During her employment with Chocolat, plaintiff Jackson would occasionally work in excess of ten (10) hours in one day, but Defendants would not pay her for an additional hour of work as is required by New York State and federal law.

67. Further, every one of plaintiff Jackson's paychecks from Defendants included a food deduction for each day she worked, regardless if she wanted or consumed the food provided by Defendants. Moreover, the meals provided by Defendants did not comport with New York State Law to qualify for a deduction on plaintiff Jackson's paychecks.

68. In addition, Defendants would routinely fail to pay plaintiff Jackson her paycheck on the regular pay date, and almost always paid her more than seven (7) calendar days after the end of the week in which her wages were earned.

69. On some occasions, plaintiff Jackson's was not paid at all for wages she had earned.

70. When plaintiff Jackson's complained to Defendants about these unlawful pay practices, Defendants retaliated by scheduling her for less shifts.

71. Upon information and belief, Defendants would retaliate against all of their employees by scheduling them for less shifts or terminating them when they complained about the unlawful pay practices.

72. Plaintiff Jackson's complained to managers that worked for Defendants, who kept making excuses as to why Defendants were not paying her.

73.     As a result, plaintiff Jackson's stopped working for Defendants, but continued to demand she get paid for the wages she had already earned.

74.     To date Defendants have not paid plaintiff Jackson last week of earned wages.

75.     At no time during her association with Defendants was plaintiff Jackson ever employed by defendant Moca, nor had she ever worked at the physical location where Moca is located.

76.     Upon information and belief, Defendants occasionally paid Plaintiff Jackson and other employees of Chocolat out of the bank accounts belonging to Moca.

77.     Further said pay checks from Moca included paystubs that reflected several inaccuracies, such as, the amount of taxes withheld for the year and the year to date earnings for plaintiff Jackson.

**Specific Allegations of Ashley Thompson**

78.     Plaintiff Ashley Thompson's, consent to sue form is attached hereto as Exhibit A.

79.     Plaintiff Thompson was hired and worked for Defendant Chocolat as a waitress from on or about April 2016 until on or about November 2016.

80.     At the time Thompson was hired, Defendants did not give her written notice of her pay rate, the overtime rate, how she would be paid, or any other information Defendants were obligated to provide pursuant to New York State and federal law, nor did Defendants ever provide this written notice at any time during her employment.

81.     Plaintiff Thompson was hourly employee and because she was a waitress who regularly received tips Defendants took a tip credit against her wages.

82. Defendants also required plaintiff Thompson to participate in tip pooling, and share a percentage of her tips with other Chocolat employees, such as food runners and bussers.

83. Defendants never provided written notice of this tip pooling arrangement to plaintiff Thompson.

84. Further, even though plaintiff Thompson distributed a significant portion of the tips she collected at the end of her shift to the other staff, her pay stub each week reflected the gross amount of the tips she collected before the distribution. As a result, Defendants would claim a larger tip credit against her wages, and in some instances, this practice would result in plaintiff Thompson to be paid an hourly rate that is lower than federal and New York State minimum wage. Consequently, plaintiff Thompson's pay records were routinely inaccurate, subjecting her to higher taxes and less income.

85. During her employment with Chocolat, plaintiff Thompson would occasionally work in excess of ten (10) hours in one day, but Defendants would not pay her for an additional hour of work as is required by New York State and federal law.

86. Further, every one of plaintiff Thompson's paychecks from Defendants included a food deduction for each day she worked, regardless if she wanted or consumed the food provided by Defendants. Moreover, the meals provided by Defendants did not comport with New York State Law to qualify for a deduction on plaintiff Thompson's paychecks.

87. In addition, Defendants would routinely fail to pay plaintiff Thompson her paycheck on the regular pay date, and almost always paid her more than seven (7) calendar days after the end of the week in which her wages were earned.

88. On some occasions, plaintiff Thompson was not paid at all for wages she had earned.

89. When plaintiff Thompson complained to Defendants about these unlawful pay practices, Defendants retaliated by scheduling her for less shifts.

90. Upon information and belief, Defendants would retaliate against all of their employees by scheduling them for less shifts or terminating them when they complained about the unlawful pay practices.

91. At no time during her association with Defendants was plaintiff Thompson ever employed by Defendant Moca, nor had she ever worked at the physical location where Moca is located.

92. Upon information and belief, Defendants had occasionally paid Plaintiff Thompson and other employees of Chocolat out of the bank accounts belonging to Moca.

93. Further said pay checks from Moca included paystubs that reflected several inaccuracies, such as, the amount of taxes withheld for the year and the year to date earnings for plaintiff Thompson.

**Specific Allegations of Tynise Watson**

94. Plaintiff Tynise Watson's consent to sue form is attached hereto as Exhibit A.

95. Plaintiff Watson was hired and worked for Defendant Chocolat as a waitress from on or about May 2016 until on or about the present.

96. At the time Watson was hired, Defendants did not give her written notice of her pay rate, the overtime rate, how she would be paid, or any other information Defendants

were obligated to provide pursuant to New York State and federal law, nor did Defendants ever provide this written notice at any time during her employment.

97. Plaintiff Watson was hourly employee and because she was a waitress who regularly received tips, Defendants took a tip credit against her wages.

98. Defendants also required plaintiff Watson to participate in tip pooling, and share a percentage of her tips with other Chocolat employees, such as food runners and bussers.

99. Defendants never provided written notice of this tip pooling arrangement to Plaintiff Watson.

100. Further, even though plaintiff Watson distributed a significant portion of the tips she collected at the end of her shift to the other staff, her pay stub each week reflected the gross amount of the tips she collected before the distribution. As a result, Defendants would claim a larger tip credit against her wages, and in some instances, this practice would result in plaintiff Watson to be paid an hourly rate that is lower than federal and New York State minimum wage. Consequently, plaintiff Watson's pay records were routinely inaccurate, subjecting her to higher taxes and less income.

101. During her employment with Chocolat, plaintiff Watson would occasionally work in excess of ten (10) hours in one day, but Defendants would not pay her for an additional hour of work as is required by New York State and federal law.

102. Further, every one of plaintiff Watson's paychecks from Defendants included a food deduction for each day she worked, regardless if she wanted or consumed the food provided by Defendants. Moreover, the meals provided by Defendants did not comport with New York State Law to qualify for a deduction on plaintiff Watson's paychecks.

103.     In addition, Defendants would routinely fail to pay plaintiff Watson her paycheck on the regular pay date, and almost always paid her more than seven (7) calendar days after the end of the week in which her wages were earned.

104.     On some occasions, plaintiff Watson was not paid at all for wages she had earned.

105.     When plaintiff Watson complained to Defendants about these unlawful pay practices, Defendants retaliated by scheduling her for less shifts.

106.     Upon information and belief, Defendants would retaliate against all of their employees by scheduling them for less shifts or terminating them when they complained about the unlawful pay practices.

107.     At no time during her association with Defendants was plaintiff Watson ever employed by Defendant Moca, nor had she ever worked at the physical location where Moca is located.

108.     Upon information and belief, Defendants had occasionally paid plaintiff Watson and other employees of Chocolat out of the bank accounts belonging to Moca.

109.     Further said pay checks from Moca included paystubs that reflected several inaccuracies, such as, the amount of taxes withheld for the year and the year to date earnings for plaintiff Watson.

**Specific Allegations of Sandra Adarquah**

110.     Plaintiff Sandra Adarquah's consent to sue form is attached hereto as Exhibit A.

111.     Plaintiff Sandra Adarquah was hired and worked for Defendant Chocolat as a bartender from on or about July 2016 until on or about November 2016.

112.     At the time Adarquah was hired, Defendants did not give her written notice of her pay rate, the overtime rate, how she would be paid, or any other information Defendants were obligated to provide pursuant to New York State and federal law, nor did Defendants ever provide this written notice at any time during her employment.

113.     Plaintiff Adarquah was hourly employee and because she was a bartender who regularly received tips Defendants took a tip credit against her wages.

114.     Defendants also required plaintiff Adarquah to participate in tip pooling, and share a percentage of her tips with other Chocolat employees, such as food runners, servers, and bussers.

115.     Defendants never provided written notice of this tip pooling arrangement to plaintiff Adarquah.

116.     Further, despite not having written notice of the tip pooling arrangement, when plaintiff Adarquah first started with Chocolat she was required to distribute a certain percentage of her tips to other Chocolat staff. However, at some point Defendants changed their tip pool policy without informing plaintiff Adarquah. Chocolat's new policy was to have its management collect all the tips and pay the staff their respective percentages earned.  Since no one informed plaintiff Adarquah of this new policy, she continued paying the staff out of her own tips, thus effectively double tipping the staff from her tips and causing her to be denied her full wage and be paid an hourly rate that is lower than federal and New York State minimum wage.

117.     In addition, during her employment with Chocolat, plaintiff Adarquah would occasionally work in excess of ten (10) hours in one day, but Defendants would not pay her for an additional hour of work as is required by New York State and federal law.

118.     Further, every one of plaintiff Adarquah's paychecks from Defendants included a food deduction for each day she worked, regardless if she wanted or consumed the food provided by Defendants. Moreover, the meals provided by Defendants did not comport with New York State Law to qualify for a deduction on plaintiff Adarquah's paychecks.

119.     In addition, Defendants would routinely fail to pay plaintiff Adarquah her paycheck on the regular pay date, and almost always paid her more than seven (7) calendar days after the end of the week in which her wages were earned.

120.     On some occasions, plaintiff Adarquah was not paid at all for wages she had earned.

121.     When plaintiff Adarquah complained to Defendants about these unlawful pay practices, Defendants retaliated by scheduling her for less shifts.

122.     Upon information and belief, Defendants would retaliate against all of their employees by scheduling them for less shifts or terminating them when they complained about the unlawful pay practices.

123.     At no time during her association with Defendants was plaintiff Adarquah ever employed by Defendant Moca, nor had she ever worked at the physical location where Moca is located.

124.     Upon information and belief, Defendants occasionally paid plaintiff Adarquah and other employees of Chocolat out of the bank accounts belonging to Moca.

125.     Further, upon information and belief, said pay checks from Moca included paystubs that reflected several inaccuracies, such as, the amount of taxes withheld for the year and the year to date earnings for plaintiff Adarquah.

**Other Violations Affecting Plaintiffs.**

**Minimum Wage Violations**

126.    Defendants failed to post a notice of employee rights in a conspicuous location, in violation of 29 C.F.R. § 516.4.

127.    Defendants also did not inform Plaintiffs about their entitlement to a tip credit and are therefore not entitled to a tip credit toward the minimum wage in accordance with 29 U.S.C. §203(m) and 12 N.Y.C.R.R. 146-2.2.

128.    Defendants committed the foregoing acts willfully and against Plaintiff, the FLSA Collective Plaintiffs, and the Class.

**Overtime Violations**

129.    Although some Plaintiffs regularly worked more than 40 hours each work, Defendants never paid them anything for their overtime work, either at their regular rate or at an overtime premium of 150% of their regular rate.

130.    Defendants are not entitled to a tip credit as to Plaintiffs' overtime claims in accordance with 29 U.S.C. §203(m) and 12 N.Y.C.R.R. 146-2.2.

131.    Defendants committed the foregoing acts willfully and against Plaintiff, the FLSA Collective Plaintiffs, and the Class.

**Unlawful Deductions**

132.    Defendants also regularly unlawfully deducted from Plaintiffs' pay and sometimes failed to pay Plaintiffs anything at all.

133.    Although Defendants agreed to pay Plaintiffs a specific wage, Defendants deducted from Plaintiffs' pay for an unlawful reason.

134. Specifically, Defendants deducted for meals for each day Plaintiffs worked, even though such meals did not meet the requirements to qualify for such deductions under the law.

135. Defendants also occasionally deducted from Plaintiffs' pay when customers refused to pay their bills.

136. Defendants committed the foregoing acts willfully and against Plaintiff, the FLSA Collective Plaintiffs, and the Class.

**Notice and Recordkeeping Violations**

137. Defendants failed to provide Plaintiffs with a wage notice or accurate paystubs in compliance with NYLL § 195.

138. Defendants did not provide Plaintiffs with a notice specifying their rate of pay, the basis of pay, allowances (if any) claimed against the minimum wage (e.g., tips, meals, lodging, etc.), or the identification of the regular pay day.

139. Further, Defendants did not distribute to Plaintiff a Notice and Acknowledgement of Pay form as required by NYLL § 195.

140. Defendants also did not provide Plaintiffs with an accurate paystub specifying the pay period, their hourly rate of pay, the regular and overtime hours they work, or other information required under NYLL § 195.

141. Defendants have willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL and supporting regulations.

142. Defendants committed the foregoing acts willfully and against Plaintiff, the FLSA Collective Plaintiffs, and the Class.

**FLSA Collective Action Allegations.**

143. Defendants' violations of the FLSA and NYLL extend beyond the Plaintiffs to all other similarly situated employees.

144. Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated current and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

145. Upon information and belief, there are at least fifty (50) current and former servers, bartenders, hosts/hostesses, and other employees performing similar duties who have been denied minimum wage and overtime compensation while working for Defendants.

146. At all relevant times, Plaintiffs and others who are and/or have been similarly situated, have had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans of willfully failing and refusing to pay the statutorily required minimum wage for all hours worked, willfully failing and refusing to pay the statutorily required overtime compensation for hours worked in excess of forty (40) per workweek, and willfully failing to keep records required by the FLSA and the NYLL. Plaintiffs' stated herein are similar to those of other employees.

147. In bringing this action, Plaintiffs are representative of and are acting on behalf of the interests of other current and former employees who have worked for Defendants within the last six (6) years.

148. Similarly situated former and current employees are readily identifiable and locatable through Defendants' records. These similarly situated employees should be notified of and allowed to opt-in to this action, pursuant to 29 U.S.C. § 216(b).

**Class Action Allegations Under Fed. R. Civ. P. 23(b)(3) for Violations of the NYLL.**

149.     Plaintiffs bring this action on behalf of themselves and all other current and former servers, bartenders, hosts/hostesses and other persons who were or are employed by Defendants but who did not receive compensation required by the NYLL in respect to their work for Defendants.

150.     Upon information and belief, this class of persons consists of no less than fifty (50) persons, and the class is thus so numerous that joinder of all members is impracticable under the standards of Fed.R.Civ.P.23(a)(1).

151.     There are questions of law and fact common to the class, which predominate over any questions affecting only individual members, specifically: whether employment of Plaintiffs by Defendants is subject to jurisdiction and wage and overtime requirements of the NYLL.

152.     Plaintiffs' claims are typical of the claims of the above-described class in that all of the members of the class have been similarly affected by the acts and practices of Defendants.

153.     Plaintiffs will fairly and adequately protect the interests of the members of the class, in that their interests are not adverse to the interests of other members of the class.

154.     A class action is superior to the other available methods for the fair and efficient adjudication of the controversy under the standards of Fed.R.Civ.P.23(b)(3).

155.     Plaintiffs bring the following claims for relief herein on behalf of themselves and all other persons similarly situated as a class action pursuant to Fed.R.Civ.P. 23, in respect to all claims that Plaintiffs and all persons similarly situated have against Defendants as a result of Defendants' violations of NYLL.

## FIRST CLAIM FOR RELIEF
**(Minimum Wage Violations under the FLSA, 29 U.S.C. § 201, *et seq.*, Brought by Plaintiffs Jackson, Thompson, Watson, and Adarquah on Behalf of Themselves and the FLSA Collective Plaintiffs)**

156.    Plaintiffs on behalf of themselves and the FLSA Collective Plaintiffs, repeat and re-allege all paragraphs above as though fully set forth herein.

157.    At all relevant times, Defendants have been, and continue to be, "employers" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of FLSA, 29 U.S.C. § 203. At all relevant times, Defendants have employed, "employee[s]," including Plaintiff and each of the FLSA Collective Plaintiffs.

158.    Defendants have knowingly and willfully engaged in a policy, pattern or practice of violating the FLSA, as detailed in this Complaint.

159.    Throughout the statute of limitations period covered by these claims, Defendants failed to pay Plaintiffs and others similarly situated the federal minimum wage for each hour worked, in violation of 29 U.S.C. §§ 206(a) and 255(a).

160.    Liquidated damages are sought in an amount equal to one hundred percent (100%) of the total amount of wages owed to Plaintiffs and others similarly situated, pursuant to 29 U.S.C. §216.

161.    Plaintiffs seek damages in the amount of their respective unpaid compensation, liquidated (double) damages as provided by the FLSA, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## SECOND CLAIM FOR RELIEF
**(Overtime Wage Violations under the FLSA, 29 U.S.C. § 207, Brought by Plaintiffs Brown and Jackson on Behalf of Themselves and the FLSA Collective Plaintiffs)**

162.    Plaintiffs on behalf of themselves and the FLSA Collective Plaintiffs, repeat and re-allege all paragraphs above as though fully set forth herein.

163.    At all relevant times, Defendants have been, and continue to be, an "employer" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of FLSA, 29 U.S.C. § 203. At all relevant times, Defendants have employed , "employee[s]," including Plaintiff and each of the FLSA Collective Plaintiffs.

164.    Throughout the statute of limitations period covered by these claims, plaintiffs Brown and Jackson occasionally worked in excess of forty (40) hours per workweek.

165.    At all relevant times hereto, Defendants have had and operated under a decision, policy and plan, and under common policies, programs, practices, procedures, protocols, routines and rules of knowingly and willfully failing and refusing to pay plaintiffs Brown, Jackson, and others similarly situated at one and a half times their regular rate of pay for all hours of work in excess of forty (40) hours per workweek, and willfully failing to keep required records, in violation of the FLSA.

166.    Plaintiffs Brown and Jackson seek damages in the amount of their respective unpaid compensation, liquidated (double) damages as provided by the FLSA, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

### THIRD CLAIM FOR RELIEF
**(Failure to Promptly Pay Wages Under the FLSA, Brought by Plaintiffs Brown, Jackson, Thompson, Watson, and Adarquah on Behalf of Themselves and the FLSA Collective Plaintiffs)**

167.    Plaintiffs on behalf of themselves and the FLSA Collective Plaintiffs, repeat and re-allege all paragraphs above as though fully set forth herein.

168.    At all relevant times, Defendants have been, and continue to be, "employers" engaged in interstate "commerce" and/or in the production of "goods" for

"commerce," within the meaning of FLSA, 29 U.S.C. § 203. At all relevant times, Defendants have employed, "employee[s]," including Plaintiff and each of the FLSA Collective Plaintiffs.

169.    Pursuant to the FSLA employers are required to pay their employees promptly after they earned their wages.

170.    Defendants routinely failed to pay Plaintiffs on their regularly scheduled pay days and sometimes even failed to pay Plaintiffs at all.

171.    Defendants unlawfully failed to pay Plaintiffs timely or at all for the last week of their employment.

172.    As a direct and proximate result of Defendants' unlawful conduct, as set forth herein, Plaintiffs have sustained damages and seek recovery for unpaid wages in an amount to be determined at trial, attorneys' fees, costs, liquidated damages and prejudgment interest, and such other legal and equitable relief as this Court deems just and proper.

**FOURTH CLAIM FOR RELIEF**
**(Minimum Wage Violations under NYLL § 650 *et seq.*, Brought by Plaintiffs Jackson, Thompson, Watson, and Adarquah on Behalf of Themselves and the Class)**

173.    Plaintiffs on behalf of themselves and members of the Class, repeat and re-allege all paragraphs above as though fully set forth herein.

174.    Defendants knowingly and willfully paid the Plaintiffs and others similarly situated less than the minimum wage in violation of NYLL § 652 and the supporting regulations of the New York State Department of Labor.

175.    Defendants' failure to pay the Plaintiffs and others similarly situated minimum wage has been willful within the meaning of the NYLL § 663.

176.     Liquidated damages are sought in an amount equal to one hundred percent (100%) of the total amount of wages owed to Plaintiffs and others similarly situated, pursuant to NYLL § 663.

177.     As a direct and proximate result of Defendants' willful and unlawful conduct, as set forth herein, Plaintiffs and others similarly situated have sustained damages and seek recovery for unpaid wages in an amount to be determined at trial, attorneys' fees, costs, liquidated damages and prejudgment interest as provided by NYLL § 663 and supporting regulations, and such other legal and equitable relief as this Court deems just and proper.

**FIFTH CLAIM FOR RELIEF**
(**Overtime Wage Violations under NYLL § 650** *et seq.*, **N.Y. Comp. Codes R. & Regs. Tit. 12, §§ 137-1.3 (2010), 146-1.4 (2011) Brought by Plaintiffs Brown and Jackson on Behalf of Themselves and the Class**)

178.     Plaintiffs on behalf of themselves and members of the Class, repeat and re-allege all paragraphs above as though fully set forth herein.

179.     New York law prohibits an employer from permitting an employee to work without paying overtime wages of 150% of his or her regular rate for all hours worked in excess of forty (40) in any workweek.

180.     Throughout the statute of limitations period covered by these claims, Defendants knowingly, willfully, regularly and repeatedly failed to pay Plaintiffs and others similarly situated at the required overtime rates, one and a half times their regular rate of pay, for hours worked in excess of forty (40) per workweek.

181.     Liquidated damages are sought in an amount equal to one hundred percent (100%) of the total amount of wages owed to Plaintiffs and others similarly situated, pursuant to NYLL § 663.

182. As a direct and proximate result of Defendants' willful and unlawful conduct, as set forth herein, Plaintiffs and others similarly situated have sustained damages and seek recovery for unpaid wages in an amount to be determined at trial, attorneys' fees, costs, liquidated damages and prejudgment interest as provided by NYLL § 663 and supporting regulations, and such other legal and equitable relief as this Court deems just and proper.

**SIXTH CLAIM FOR RELIEF**
**(NYLL Failure to Notify under NYLL §§ 195, 198, Brought by Plaintiffs Brown, Jackson, Thompson, Watson, and Adarquah on Behalf of Themselves and the Class)**

183. Plaintiffs on behalf of themselves and members of the Class, repeat and re-allege all paragraphs above as though fully set forth herein.

184. Pursuant to §195(1) of the NYLL, within ten (10) business days of Plaintiffs and other similarly situated employees' hiring, Defendants were obligated to provide them with a notice describing, *inter alia*, their hourly regular and overtime rates of pay.

185. Pursuant to §195(3) of the NYLL, Defendants are obligated to provide Plaintiffs and other similarly situated employees with accurate paystubs, along with their pay, that specified their rate of pay, their hours worked, and the pay period.

186. Defendants failed to provide Plaintiffs and other similarly situated employees with a notice or paystub in accordance with §195 of the NYLL.

187. As a direct and proximate result of Defendants' willful and unlawful conduct, as set forth herein, Plaintiffs have sustained damages and seek damages in accordance with §195 of the NYLL for each week Defendants failed to provide such notice and paystubs, along with attorneys' fees, costs and prejudgment interest as provided by NYLL § 198 and supporting regulations, and such other legal and equitable relief as this Court deems just and proper.

## SEVENTH CLAIM FOR RELIEF
### (NYLL Unlawful Deductions under NYLL § 196-d Brought by Plaintiffs Brown, Jackson, Thompson, Watson, and Adarquah on Behalf of Themselves and the Class)

188.    Plaintiffs on behalf of themselves and members of the Class, repeat and re-allege all paragraphs above as though fully set forth herein.

189.    Pursuant to NYLL §193, it was unlawful for Defendants to deduct from Plaintiffs and other similarly situated employees' wages unless the deductions were for their benefit and were authorized in writing by Plaintiffs other similarly situated employees.

190.    Defendants routinely deducted from Plaintiffs and other similarly situated employees' wages in contravention of NYLL §193.

191.    As a direct and proximate result of Defendants' willful and unlawful conduct, as set forth herein, Plaintiffs and other similarly situated employees have sustained damage and seek recovery for unlawful deductions in an amount to be determined at trial, attorneys' fees, costs, liquidated damages and prejudgment interest as provided by NYLL § 198 and supporting regulations, and such other legal and equitable relief as this Court deems just and proper.

## EIGHTH CLAIM FOR RELIEF
### (NYLL Spread-of-Hours, Brought by Plaintiffs Brown, Jackson, Thompson, and Adarquah on Behalf of Themselves and the Class)

192.    Plaintiffs on behalf of themselves and members of the Class, repeat and re-allege all paragraphs above as though fully set forth herein.

193.    Pursuant to 12 NYCRR 146-1.6 and 137-1.7, Defendants had an obligation to compensate Plaintiffs for one hour's pay at the minimum wage for each day they worked more than ten (10) hours.

194.     Although Plaintiffs occasionally worked more than ten (10) hours in one day, Defendants failed to compensate Plaintiffs for one hour's pay at the minimum wage.

195.     As a direct and proximate result of Defendants' willful and unlawful conduct, as set forth herein, Plaintiffs have sustained damage and seeks recovery for unlawful deductions in an amount to be determined at trial, attorneys' fees, costs, liquidated damages and prejudgment interest as provided by NYLL § 663 and supporting regulations, and such other legal and equitable relief as this Court deems just and proper.

## NINTH CLAIM FOR RELIEF
**(Failure to Pay Timely Wages in Violation of the NYLL, Brought by Plaintiffs Brown, Jackson, Thompson, Watson, and Adarquah on Behalf of Themselves and the Class)**

196.     Plaintiffs on behalf of themselves and members of the Class, repeat and re-allege all paragraphs above as though fully set forth herein.

197.     New York State labor law § 191 requires that an employee be paid no "later than  seven  calendar days after the end of the week in which the wages are earned."

198.     Defendants routinely failed to pay Plaintiffs within seven calendar days after the end of the week in which their wages were earned and sometimes failed to pay Plaintiffs at all.

199.      New York State labor law §191 also requires that an employee be paid within five (5) days of termination.

200.     Defendants unlawfully failed to pay Plaintiffs timely or at all for the last week of their employment.

201.     Defendants willfully and intentionally refused to make these payments in violation of the NYLL and supporting Department of Labor Regulations.

202.     As a direct and proximate result of Defendants' willful and unlawful conduct, as set forth herein, Plaintiffs have sustained damages and seek recovery for unpaid wages in an amount to be determined at trial, attorneys' fees, costs, liquidated damages and prejudgment interest as provided by NYLL § 663 and supporting regulations, and such other legal and equitable relief as this Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs and members of the Class, respectfully request that this Court enter judgment awarding:

A.     Compensatory damages, including back pay, front pay, punitive damages, and liquidated damages, to be paid by Defendants in an amount to be determined at trial;

B.     Damages for emotional distress to be paid by Defendants in an amount to be determined at trial;

C.     Liquidated damages pursuant to the FLSA and NYLL;

D.     Penalties available under applicable laws;

E.     Costs of action incurred herein, including expert fees;

F.     Pre-judgment and post-judgment interest, as provided by law;

G.     Attorneys' fees, including· fees pursuant to 29 U.S.C. § 216, N.Y. Lab. L. § 663, and other applicable statutes;

H.     Designation of this action as a collective action on behalf of the FLSA Collective Plaintiffs and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

I.     Designation of Plaintiffs as Representative of the FLSA Collective Plaintiffs;

J.     Designation of this action as a class action pursuant to F.R.C.P. 23;

K.     Designation of Plaintiffs as Representative of the Class; and,

L.    Such other and further legal and equitable relief as this Court deems necessary, just and proper.

Dated: January 10, 2017
        New York, New York


                                        Respectfully submitted,



                              _____/s/_____
                              COHEN & FITCH LLP
                              GERALD COHEN
                              JOSHUA FITCH
                              ILYSSA FUCHS
                              Attorneys for Plaintiffs
                              233 Broadway, Suite 1800
                              New York, N.Y. 10279
                              (212) 374-9115
                              gcohen@cohenfitch.com
                              jfitch@cohenfitch.com
                              ifuchs@cohenfitch.com