USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:   9/18/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
AHSINET BROWN, ASHLEY THOMPSON, PRECIOUS
JACKSON, TYNISE WATSON, and SANDRA ADARQUAH,
*Individually And On Behalf Of Others Similarly
Situated*,

     Plaintiffs,

                -against-

WILD BLUE ORCHID, INC. (d/b/a CHOCOLAT), MOCA
BAR AND GRILL, INC., and LEON ELLIS, *Individually and
In his Official Capacity*,

                Defendants.
-----------------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**

**1:17-cv-00169 (RMB) (KHP)**

**To: Richard M. Berman, United Stated District Judge**
**From: Katharine H. Parker, United States Magistrate Judge**

This matter is before me for report and recommendation on the parties' joint

application to approve the parties' settlement pursuant to *Cheeks v. Freeport Pancake House,*

*Inc.*, 796 F.3d 199 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 824 (2016), to the extent it waives

claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq*.

**I.     Facts**

Defendant Wild Blue Orchid, Inc. ("Chocolat") and Defendant Moca Bar and Grill, Inc.

("Moca" together with Chocolat, "Defendants") are restaurants located close to each other in

New York City. Defendant Ellis owns and operates the restaurants. Plaintiff Brown worked as a

hostess at Chocolat from March 2016 through November 2016. Plaintiff Jackson also worked as

a hostess at Chocolat from December 2015 through October 2016. Plaintiff Thompson worked

as a waitress at Chocolat from April 2016 through November 2016. Plaintiff Watson worked as a

waitress for Chocolat from May 2016 through the date of the Complaint. Plaintiff Adarquah

worked as a bartender for Chocolat from July 2016 through November 2016.

The Complaint asserts nine cause of action: (1) Defendants failed to pay Plaintiffs

Jackson, Thompson, Watson and Adarquah the appropriate minimum wage in violation of the

FLSA; (2) Defendants filed to pay appropriate overtime wages to Plaintiffs Brown and Jackson in

violation of the FLSA; (3) Defendants failed to timely pay all of the Plaintiffs in violation of the

FLSA; (4) Defendants failed to pay Plaintiffs Jackson, Thompson, Watson and Adarquah

appropriate minimum wage in violation of New York Labor Law ("NYLL") Section 650 *et seq.;* (5)

Defendants failed to pay Plaintiffs Brown and Jackson appropriate overtime pay under the NYLL

and regulations, NYLL Section 650 *et seq*. and N.Y. Comp. Codes R. & Regs. tit. 12 Section 137-

1.3, 146-1.4; (6) Defendants failed to give all of the Plaintiffs the requisite wage notice as

required under NYLL Sections 195 and 198; (7) Defendants took unlawful deductions from the

paychecks of the Plaintiffs in violation of NYLL Section 196(d); (8) Defendants failed to pay

Plaintiffs Brown, Jackson, Thompson and Adarquah spread of hours pay for days when they

worked ten or more hours as required under New York Law, N.Y. Comp. Codes R. & Regs. tit. 12

Sections 146-1.6 and 137-1.7; and (9) Defendants failed to timely pay all of the Plaintiffs as

required under NYLL Section 191. The Complaint seeks various forms of relief, including

payment of wages, liquidated damages, statutory penalties, attorneys' fees, and costs.

Defendants vigorously deny the allegations in the Complaint. They dispute the hours

worked, the lack of notice of tip policy, and that they improperly deducted amounts from

Plaintiffs' paychecks. According to Plaintiffs, some (about 50%) paychecks may have been paid a

few weeks after they were due, although the parties disagree what the legal ramifications are

for the late payments. Plaintiffs say that they are entitled to double pay for each week their paycheck was late, whereas Defendants contend such a penalty is inappropriate and unavailable. Under their theory that Defendants should pay them double the wages due in the week for each late paycheck as liquidated damages, Plaintiffs contend they are owed $26,377.14 in penalties under federal and/or state law, though they concede that there are few cases supporting this theory of damages.

In addition to the factual and legal disputes over Plaintiffs' damages, Defendants assert that they are in extreme financial distress and cannot afford to pay a greater total amount in settlement. In an effort to reach an early resolution of Plaintiffs' claims, the parties engaged in arm's-length negotiations and ultimately reached a settlement.

## II.    Settlement Terms

Under the terms of the settlement, Defendants will pay a total settlement of $20,000 payable in eight installments, with $601.40 paid in respects of costs, $6,666.67 going to attorneys' fees, and the remaining $12,731.93 being split among the five Plaintiffs (for an average recovery of $2,546.38 per Plaintiff). This will be paid as follows:

- The first payment shall be Five Thousand Dollars ($5,000.00).

-  The remaining seven (7) payments shall be in the amount of Two Thousand One Hundred Forty Two Dollars and Eighty Six Cents ($2,142.86) which amounts shall be due and payable monthly over seven months.

- The settlement provides for a mutual general release of claims.

- Defendants are not admitting liability by virtue of entering into a settlement agreement.

Assuming court approval of the settlement agreement, the parties stipulate to dismissal of this action with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii) ("Rule 41").

## III.     Approval of the FLSA Settlement

The FLSA sets forth the minimum wage and overtime that an employee must be paid, as well as specific exemptions from its requirements. The U.S. Supreme Court recognized that the statute was designed to protect "certain groups of the population from substandard wages and excessive hours which endangered the national health and well-being." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945). Since then, courts have recognized the unique policy considerations underlying the FLSA and the importance of deterring employers from exerting undue pressure on low wage employees to compromise valid wage claims. Citing these concerns, the Second Circuit has held that settlements of FLSA claims in which the parties terminate the action via a stipulation of dismissal pursuant to Rule 41 require approval of the district court or the U.S. Department of Labor to take effect. *Cheeks*, 796 F.3d at 206.

Court approval of an FLSA settlement is appropriate "when [the settlement] [is] reached as a result of contested litigation to resolve *bona fide* disputes." *Johnson v. Brennan*, No. 10-cv-4712 (CM), 2011 WL 4357376, at *12 (S.D.N.Y. Sept. 16, 2011). "If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement." *Id.* (citations omitted); *see also Velasquez v. SAFI-G, Inc.*, 137 F. Supp. 3d 582, 584 (S.D.N.Y. 2015) (parties must demonstrate settlement is "fair and reasonable").

There are five factors relevant to an assessment of the fairness of an FLSA settlement including: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement

will enable the parties to avoid anticipated burdens and expenses in establishing their

respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties;

(4) whether the settlement agreement is the product of arm's-length bargaining between

experienced counsel; and (5) the possibility of fraud or collusion. *Wolinsky v. Scholastic Inc.*, 900

F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (quoting *Medley v. Am. Cancer Soc.*, No. 10-cv-3214 (BSJ),

2010 WL 3000028, at *1 (S.D.N.Y. July 23, 2010) (other citations omitted)). The Court

recommends that the total settlement amount here be approved as satisfying these criteria.

First, Plaintiffs' maximum recovery is based on factual assumptions that Defendants

contest regarding the amount of unpaid hours worked, lateness of paychecks, and deductions

made. Furthermore, there are legal disputes, including whether the FLSA provides for double

damages for wages that are paid but paid at a date after the regular pay date.

If Defendants succeeded in establishing that Plaintiffs' assumptions are incorrect,

Plaintiffs' ultimate recovery would be less than the amount of damages they currently claim,

and possibly significantly less. Discovery revealed that there were very few days when

Plaintiffs worked 10 hours or more in a day and that the alleged damages are being computed

based on maximum penalty assumptions rather than lost wage calculations. Furthermore,

there is a real possibility that Defendants may not be able to satisfy a judgment if this case

proceeds through trial. The settlement amounts to more than 70% of Plaintiffs' maximum

recovery as computed by Plaintiffs' counsel. Weighing the benefits of a guaranteed payment

to Plaintiffs against the risks and burdens associated with proceeding with a lengthy litigation,

the settlement is reasonable and these factors weigh in favor of approval.

After analyzing the issues and considering Defendants' various defenses, there were several risks that came to light if Plaintiffs continued to litigate the case. Plaintiffs were particularly concerned with the following critical issues: (a) whether the Plaintiffs would be entitled to liquidated damages for late payment; (b) whether the Plaintiffs would be able to prove the various other damages, based on their own testimony; and, (c) and whether Defendants would be solvent at the end the litigation to pay Plaintiffs if they were ultimately successful. In light of these factors, the settlement represents a reasonable compromise of the bona fide disputes and concerns in this matter. The settlement eliminates these risks and ensures that Plaintiffs will receive compensation in this matter.

With respect to the second and third factors, the settlement will entirely avoid the burden, risks, expenses, and aggravation of continued litigation. Given the factual disputes in this case, the parties faced substantial additional litigation costs and risks associated with additional discovery, motion practice, and trial. These costs and risks are fully avoided by settlement.

Fourth, both parties are represented by experienced counsel and it is clear that the settlement is the product of arm's-length bargaining between experienced counsel. Fifth, there are no factors here that suggest the existence of fraud.

The settlement agreement's terms are consistent with terms approved by courts in the Second Circuit. With respect to the non-monetary terms of the settlement, the settlement agreement contains a mutual release of claims—something that has been approved by courts in the District and that permits both sides complete repose. *See, e.g.*, *Souza v. 65 St. Marks Bistro*, No. 15-CV-327 (JLC), 2015 WL 7271747, at *5 (S.D.N.Y. Nov. 6, 2015); *Lola v. Skadden,*

*Arps, Meagher, Slate & Flom LLP*, No. 13-cv-5008 (RJS), 2016 WL 922223, at *2 (S.D.N.Y. Feb. 3, 2016). Thus the Court finds the terms of the settlement objectively reasonable.

Finally, although the Court recommends approval of the terms and amount of the settlement, "[t]he Court must . . . separately assess the reasonableness of plaintiffs' attorney's fees, even when the fee is negotiated as part of a settlement rather than judicially determined." *Lazaro-Garcia v. Sengupta Food Servs.*, No. 15-cv-4259 (RA), 2015 WL 9162701, at *3 (S.D.N.Y. Dec. 15, 2015) (internal quotations omitted). The settlement agreement provides that one-third of the settlement fund will be paid to Plaintiffs' counsel as a contingency fee and costs. Though contingency fees of one-third in FLSA cases are often approved in this Circuit, *see,* e.*g.*, *Santos v. EL Tepeyac Butcher Shop Inc.*, No. 15-cv-814 (RA), 2015 WL 9077172, at *3 (S.D.N.Y. Dec. 15, 2015); *Rangel v. 639 Grand St. Meat & Produce Corp.*, No. 13-cv-3234 (LB), 2013 WL 5308277, at *1 (E.D.N.Y. Sept. 19, 2013), such an award is excessive here.

In assessing the reasonableness of the proposed attorneys' fee allocation, the Court considers the "lodestar" amount, which is "the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Stanczyk v. City of New York*, 752 F.3d 273, 284 (2d Cir. 2014). Lead counsel in the Southern District of New York typically charge between $300 and $400 per hour in wage-and-hour cases. *See Rodriguez-Hernandez v. K Bread & Co., Inc.,* No. 15-cv-6848 (KBF), 2017 WL 2266874, at *6 (S.D.N.Y. May 23, 2017) (collecting cases). Plaintiffs' counsel submitted time records for their work on this matter, which indicate that Plaintiffs' attorneys worked 79.6 hours in total. Given the allocation of attorneys' fees of $6666.67 and the total number of hours worked, the fee allocation reimburses Plaintiffs'

counsel at a rate of $83 per hour, well below the low end of hourly rates approved for similarly experienced Plaintiffs' counsel in FLSA cases.

However, the number of hours worked by counsel in this matter is disproportionate to the procedural posture the case. Further, an attorneys' fees amount of one-third, resulting in $6666.67, far exceeds the average recovery of $2,546.38 each Plaintiff would receive here. While this is not itself improper, *see Estrella v. P.R. Painting Corp.*, 596 F. Supp. 2d 723, 727 (E.D.N.Y. 2009) (explaining that in taking into account the underlying purposes of the FLSA and NYLL fee provisions "courts have rejected the notion that fee awards should be proportionately tied to a plaintiff's recovery"), it is notable nonetheless. *See Aguilera v. Cookie Panache ex rel. Between the Bread, Ltd.*, No. 13-cv-6071 KBF, 2014 WL 2115143, at *3 (S.D.N.Y. May 20, 2014) (denying proposed FLSA attorneys' fees and finding attorneys' rates and number of hours worked excessive). Thus the proposed attorneys' fees in this matter are objectively unreasonable, and an amount of 20% of the Plaintiffs' recovery is more appropriate in light of the procedural posture of the case and the amount each Plaintiff is expected to recover. As for the requested costs of $601.40, the Court recommends approval of such costs as reasonable.

## IV.   Conclusion

For all the reasons set forth above, this Court recommends that the settlement in this matter be approved but that the attorneys' fees be limited to 20% of Plaintiffs' recovery.

**SO ORDERED.**

Dated: September 18, 2017
    New York, New York

_____
KATHARINE H. PARKER
United States Magistrate Judge

8

## NOTICE

**The parties shall have fourteen days from the service of this Report and Recommendation to file written objections to the Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure (*i.e.,* until October 2, 2017). *See also* FED. R. CIV. P. 6(a), (d) (adding three additional days only when service is made under Fed. R. Civ. P. 5(b)(2)(C) (mail), (D) (leaving with the clerk), or (F) (other means consented to by the parties)).**

**If any party files written objections to this Report and Recommendation, the opposing party may respond to the objections within fourteen days after being served with a copy. FED. R. CIV. P. 72(b)(2). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Richard M. Berman at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Berman. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(d), 72(b); *Thomas v. Arn*, 474 U.S. 140 (1985).**